1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
9

10   JENNIFER H.,

11                    Plaintiff,

12        v.

13   COMMISSIONER OF SOCIAL
     SECURITY,
14
                      Defendant.
15

CASE NO. 2:22-CV-1845-DWC

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

16

17        Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of

18   Defendant's denial of her application for Supplemental Security Income benefits (SSI) and

19   Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. Proc. 73, and

20   Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned. *See*

21   Dkt. 4. After considering the record, the Court concludes that this matter must be **REVERSED**

22   and **REMANDED** for further proceedings.

23

24

# I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed for SSI and DIB on December 14, 2012, alleging disability since January 15, 2011. Dkt. 14, Administrative Record (AR) 46, 860. Her application was denied initially and upon reconsideration. AR 99–100, 121–22. Upon Plaintiff's request, AR 183–84, a hearing was held before ALJ Tom Morris on February 11, 2016, AR 53–98. ALJ Morris determined Plaintiff was not disabled. AR 952–72. After the Appeals Council denied Plaintiff's request for appeal, AR 973–80, Plaintiff appealed to this Court. AR 981–85. The case was assigned to Judge Creatura, who affirmed the ALJ's decision on November 27, 2018. AR 986–1007.

Plaintiff appealed to the Ninth Circuit. AR 1093–97. She raised an Appointments Clause challenge to ALJ Morris's appointment. AR 1019. Before 2018, Social Security Administration (SSA) ALJs, like ALJ Morris, were appointed in the same manner as the ALJs whose appointments were invalidated in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). *See Carr v. Saul*, 141 S. Ct. 1353, 1362 (2021). While her case was pending on appeal, the Supreme Court decided *Carr v. Saul*, holding that social security claimants need not administratively exhaust Appointments Clause challenges to seek relief from the decisions of improperly appointed ALJs. *Id.* at 1362. On Defendant's unopposed motion, the Ninth Circuit remanded Plaintiff's case "to the district court with instructions to remand the case to the Agency for further proceedings consistent with the Supreme Court's intervening decision in *Carr*." AR 1013. Judge Creatura remanded as instructed. AR 1016.

The Appeals Council directed that the claim be heard by a different ALJ and consolidated with another claim Plaintiff filed in the interim.[1] AR 1019. On remand from the Appeals

---

[1] On January 22, 2019, six days before filing her notice of appeal with the Ninth Circuit, AR 1008–12, Plaintiff filed a new claim for benefits, AR 1026, which was denied initially and upon reconsideration, AR 1098, 1105. Upon her request, a hearing was held before ALJ Debra Denny on December 15, 2020, AR 912–51, who

Council, Plaintiff received a hearing on her consolidated claims before ALJ Howard Prinsloo on

May 10, 2022. AR 889–911. She was again found not disabled. AR 857–85. Plaintiff did not file

exceptions with the Appeals Council, *see* Dkt. 21 at 2, making ALJ Prinsloo's decision the final

decision of the Commissioner, 20 C.F.R. § 416.1484(a).

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

benefits if and only if the ALJ's findings are based on legal error or not supported by substantial

evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing

*Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III. DISCUSSION

Plaintiff first argues ALJ Prinsloo's decision did not cure the defect in ALJ Morris's

decision—that it was issued by an ALJ not appointed pursuant to the Appointments Clause. *See*

Dkt. 21 at 3. She cites to the Ninth Circuit's ruling in *Cody v. Kijikazi*, which considered the

proper remedies for such defects. *Id.* (citing 48 F.4th 956, 963 (9th Cir. 2022)). Plaintiff requests

a new hearing before a different ALJ. *Id.* The Court agrees with Plaintiff and therefore does not

reach any other issues.

The Ninth Circuit held in *Cody* that "claimants are entitled to an independent decision

issued by a different ALJ if a timely challenged ALJ decision is 'tainted' by" an improperly

appointed ALJ's decision. 48 F.4th at 963. *Cody*'s remedy serves two purposes. First, it

"promotes the 'structural purposes' of the Appointments Clause by ensuring only a properly

appointed Officer takes part in" the decision. *Id.* at 962. These structural purposes are

---

determined Plaintiff was not disabled, AR 1023–44. In the same order remanding the 2012 claim, the Appeals
Council vacated and remanded ALJ Denny's decision and directed the new ALJ to consolidate the 2012 and 2019
claims. AR 1019.

1  important—"[a]n Appointments Clause violation . . . weakens our constitutional design" by

2  "erod[ing] political accountability." *Id.* at 960.

3      Second, the remedy "encourage[s] claimants to raise Appointments Clause violations" by

4  giving them the prospect of a "fresh look." *See id.* at 961–63. If claimants merely received a

5  hearing before the same ALJ on remand—even if that ALJ was properly appointed in the

6  interim—the prior ALJ "would have no reason to think he did anything wrong on the merits" and

7  thus would "likely 'reach all the same judgments.'" *Id.* at 963 (quoting *Lucia*, 138 S. Ct. at 2055

8  n.5). In *Cody*, the same ALJ issued decisions both before and after being properly appointed. *Id.*

9  at 959. In her second decision, the ALJ reached the same decisions and copied entire analyses

10  verbatim from her first decision. *Id.* at 962–63. To the Ninth Circuit, this showed the second

11  decision was not "independent of" the first. *Id.* at 963.

12      Here, Plaintiff received a hearing in front of a different ALJ, ALJ Prinsloo, as *Cody*

13  requires. *See id.* at 963. But Plaintiff argues the decision was not "a genuine *de novo* hearing"

14  because ALJ Prinsloo "repeated verbatim much of the analysis from ALJ Morris's invalid

15  decision." Dkt. 21 at 3. Defendant does not dispute that parts of ALJ's Prinsloo's decision repeat

16  ALJ Morris's. *See* Dkt. 24 at 3–4.

17      Defendant instead argues that *Cody* requires only the appointment of a new ALJ. *Id.* at 4.

18  The Court disagrees. *Cody* entitles Plaintiff "to an *independent decision* issued by a different

19  ALJ." 48 F.4th at 963 (emphasis added). If a new ALJ could rely entirely on—or even give

20  deference to—the prior ALJ's analysis, afflicted claimants would not get the "remed[y] with

21  bite" *Cody* purported to give them. *See* 48 F.4th at 960 (citing *Lucia*, 138 S. Ct. at 2055).

22

23

24

1    First, a second ALJ's decision deferring to the first ALJ's decision would still obstruct

2    the Appointment Clause's "structural purposes." *Id.* at 962. The first ALJ's decision was made

3    by an officer "too far removed from the President or the head of an executive agency" to be as

4    politically accountable as the Constitution requires. *See id.* at 960, 962. A decision deferring to

5    that politically unaccountable ALJ's decision would still, then, be "tainted" by—and effectively

6    validate—the decision of a politically unaccountable officer. *See Lucia*, 138 S. Ct. at 2055.

7    Second, such a decision would erode the incentive to raise Appointments Clause

8    challenges. As the Ninth Circuit noted in assessing the second ALJ decision in *Cody*, where an

9    ALJ reaches the same conclusions and copies sentences verbatim from a prior decision, "it's

10   clear [they] didn't take a fresh look at the case." *Cody*, 48 F.4th at 963. This can be true

11   irrespective of whether the same ALJ authored the two opinions. Without the prospect of a "fresh

12   look," there would be "little benefit in defending the constitutional requirement." *Id.* at 962.

13   In sum, *Cody*'s requirement of an "independent decision" by the newly assigned ALJ is

14   not trivial—it requires a "fresh look" that neither relies upon nor defers to the prior ALJ's

15   decision. *Id.* at 963. At the same time, when two ALJs consider claims under the same law where

16   the same claimant alleges similar symptoms and presents much of the same evidence, the two

17   ALJs' analyses are bound to have some similarities. Moreover, mere overlap between two ALJs'

18   choices of words does not mean that the two ALJs did not arrive at the same decision

19   independently. Therefore, *Cody* cannot be read to require a completely unique assessment of all

20   issues considered by a new ALJ.

21   The Court finds ALJ Prinsloo's decision did not give Plaintiff the "fresh look" to which

22   she was entitled. ALJ Prinsloo and ALJ Morris's decisions display a degree of similarity far

23   beyond that which would normally be expected of two ALJs considering similar cases afresh. As

24

1  Plaintiff points out and Defendant does not dispute, Dkt. 21 at 3, 5–7, Dkt. 24 at 3–4, ALJ

2  Prinsloo repeated verbatim or nearly verbatim parts of ALJ Morris's analysis of three medical

3  experts: Dana Harmon, Ph.D.;[2] Alysa Ruddell, Ph.D.;[3] and R.A. Cline, Psy.D.[4]

4         In so doing, ALJ Prinsloo also repeated several mistakes[5] in ALJ Morris's decision

5  which—while perhaps inadvertent—demonstrate that ALJ Prinsloo adopted these parts of ALJ

6  Morris's opinion without giving a "fresh look" to the evidence discussed. Both decisions, for

7  instance, describe Dr. Cline as having opined that Plaintiff had a marked limitation in one area.

8  AR 43, 872. In fact, Dr. Cline had indicated Plaintiff had moderate-to-marked limitations in three

9  areas, including the one that the decisions discussed. AR 394–95. Similarly, Dr. Ruddell opined

10  Plaintiff had "marked/severe" limitations in two areas, AR 401, but ALJ Morris and ALJ

11  Prinsloo both only mentioned one area in which she indicated such a limitation, AR 43, 871–72.

12  It is difficult to imagine that a genuine "fresh look" at the medical evidence would not have

13  resulted in at least some of these errors being corrected before being adopted in ALJ Prinsloo's

14  decision.

15

16  _____

17         [2] *Compare* AR 43 (rejecting Dr. Harmon's opinion because (1) "claimant was not receiving mental health
treatment at that time," (2) "Dr. Harmon noted that the claimant's pattern on PAI suggested that she was
18  exaggerating or over-reporting her symptoms," (3) findings by Dr. Harmon were "within normal limits") *with* AR
871 (reaching the same conclusion and including all three reasons and quotes but adding the word "the" between
"on" and "PAI").
19         [3] *Compare* AR 43 (rejecting Dr. Ruddell's opinion because (1) it was "inconsistent with the medical
evidence" and (2) Plaintiff showed "improvement in her functioning by regularly attending appointments, attending
20  wrestling matches, participating in online dating, and shopping for groceries") *with* AR 871–72 (reaching the same
conclusion and including both reasons and quotes, but clarifying that Plaintiff attended "his [*sic*] nephews' wrestling
matches" and changing "shopping for groceries" to "shopping in stores").
21         [4] *Compare* AR 43 (rejecting Dr. Cline's opinion because (1) it was "not completely consistent with the
mental status examination," (2) "[t]he claimant scored in the mild range on depression inventory and moderate range
22  on anxiety inventory," (3) Plaintiff "had within normal limit mental status exam including normal concentration and
memory") *with* AR 872 (reaching the same conclusion because (1) Dr. Cline's opinion "is not supported by the
mental status examination," (2) "claimant only scored in the mild range on depression inventory and moderate range
23  on anxiety inventory," and (3) mental status examinations . . . are within normal limits").
         [5] The Court does not decide today whether these "mistakes" constitute error on the part of the ALJ
24  requiring remand or reversal.

1    The two decisions are also strikingly similar in their descriptions of Plaintiff's medical

2 history from 2012 through 2014. In fact, the vast majority of the sentences in this six-paragraph

3 portion of ALJ Morris's decision are repeated verbatim or nearly verbatim in ALJ Prinsloo's.

4 *Compare* AR 868–69 (from "However, the record references regular exercise 2-3 times per week

5 . . ." to "She admitted that her medication was effective.") *with* AR 41–42 (from "The record

6 references regular exercise 2-3 times per week . . ." to "She described her medication as effective

7 . . ."). Given the ample medical evidence available from this period, *see* AR 361–427, 448–700,

8 it is implausible that two ALJs would focus on the exact same facts and distill them into such

9 similar succinct descriptions while still giving that evidence a "fresh look."

10    Defendant points to some indicia purporting to show Plaintiff received an independent

11 decision. *See* Dkt. 24 at 3–4. Defendant points out that ALJ Prinsloo considered additional

12 testimony from Plaintiff, post-2016 medical opinions, and the testimony of a new Vocational

13 Expert (VE). Dkt. 24 at 3-4 (citing AR 861, 878, 889–911, 1478–2113). Defendant also points to

14 some new elements of ALJ Prinsloo's decision: a "more detailed analysis" of whether Plaintiff

15 has a Listed Impairment, "new analysis concerning the updated mental health record," a new

16 RFC ("in light of the updated record"), and new occupations (in light of the new RFC) used in

17 finding Plaintiff not disabled. Dkt. 24 at 4 (citing AR 863–67, 870, 877). Defendant has simply

18 shown that ALJ Prinsloo considered evidence unavailable to ALJ Morris and incorporated it into

19 his decision.

20    However, ALJ Prinsloo was required to give the entirety of Plaintiff's claim a "fresh

21 look," not just the newly presented evidence unavailable to ALJ Morris. A claimant who has new

22 evidence which she believes to be sufficient to justify a new decision on her claim can generally

23 present that evidence while her claim is on appeal within the agency, *see* 20 C.F.R. §§

24

1    404.900(b), 416.1400(b), or file a new claim after that, *see* SSR 11-1p. Thus, *Cody*'s incentive to

2    raise Appointments Clause challenges, 48 F.4th at 962–63, can only be enjoyed by claimants

3    who feel the evidence they already presented is material and justifies a different decision. And no

4    amount of new evidence can cure the "taint" of the old evidence's assessment having been done

5    by a politically unaccountable officer. *See id.* at 960, 962–63. Therefore, new evidence offered to

6    a second ALJ cannot be enough to make that ALJ's decision "independent" of the first ALJ's

7    decision. Rather, the inquiry must focus on whether the parts of the second ALJ's decision which

8    appear to rely upon or defer to the first ALJ's decision are material.

9            Here, ALJ Prinsloo's assessment of the opinions of Drs. Harmon, Ruddell, and Cline, and

10    the medical evidence from 2012 to 2014 were material to his decision. Drs. Harmon and Ruddell

11    opined that Plaintiff had a marked or severe limitation in her ability to communicate and perform

12    effectively in a work setting with public contact. AR 401, 405–06. ALJ Prinsloo's RFC,

13    however, found Plaintiff could have "brief and occasional contact with the public." AR 867. Dr.

14    Cline similarly opined that Plaintiff had several moderate or marked limitations which were not

15    reflected in the RFC. AR 394–95, 867, 872. Moreover, Defendant does not argue that an

16    erroneous assessment of any of these three medical opinions would be harmless. *See* Dkt. 24 at

17    5–10. ALJ Prinsloo also relied on his assessment of the medical evidence from 2012 to 2014 in

18    rejecting Plaintiff's claim that her symptoms prohibited her from leaving her home. AR 868–70.

19    If that claim were true, the VE testified, Plaintiff would be unable to perform any of the jobs ALJ

20    Prinsloo indicated she could perform in finding her not disabled. AR 909–10. Thus, despite the

21    new evidence offered to ALJ Prinsloo, his apparent deference to parts of ALJ Morris's decision

22    is enough to show Plaintiff was not given the "independent decision" to which she was entitled.

23

24

1    The Plaintiff's request for a remand for further proceedings in front of a new ALJ is

2  therefore granted. On remand, the new ALJ is to consider the entirety of the record *de novo*

3  without reliance upon or deference to the tainted decisions of ALJ Morris and Prinsloo.

4                                    **IV. CONCLUSION**

5    For the foregoing reasons, the Court **REVERSES** and **REMANDS** the decision pursuant

6  to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

7  order.

8    Dated this 10th day of October, 2023.

9

10                                    David W. Christel
11                                    Chief United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24